IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **MELVIN THORNTON** | * | **CIVIL ACTION NO. 08-0102** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **BURL CAIN, WARDEN** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is an opposed petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by petitioner Melvin Thornton ("Thornton"). Doc. # 1. For reasons stated below, it is recommended that the petition be **DENIED**.

BACKGROUND

On April 22, 1999, Thornton was indicted by the Lincoln Parish Grand Jury for the second degree murder of Frank Dunaway ("Dunaway"). On January 26, 2002, a jury found him guilty as charged. Thornton subsequently received a sentence of mandatory life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. On January 29, 2003 the Louisiana Second Circuit Court of Appeal affirmed petitioner's conviction and sentence and mailed Notice of Judgment. *State of Louisiana v. Thornton*, 836 So. 2d 1235 (La. Ct. App. 2003).

After exhausting his remedies in state court, Thornton filed a petition for a writ of habeas corpus in this court. Thornton raises the following claims for relief: (1) the evidence before the trial court was insufficient to convict him; (2) the state exercised its peremptory challenges in a

racially discriminatory manner; (3) the state violated his due process rights when the trial court failed to declare a mistrial after one of the jurors saw him in handcuffs prior to trial; (4) his sentence was unconstitutionally excessive; (5) the state violated his due process rights by not providing him with a free transcript of the trial; (6) the state infringed upon his privilege against self-incrimination by using a coerced confession against him; and (7) he was denied the effective assistance of counsel by his trial counsel for the following reasons: (a) inadequate investigation or research; (b) failure to enforce the plea agreement; (c) failure to file a motion to exclude damaging evidence; (d) failure to file a motion to change venue and object to indictment; (e) failure to impeach and cross-examine witnesses; and (f) use of deception to prevent Thornton from testifying. This court will consider each of these claims in turn.

## LAW AND ANALYSIS

**Standard of Review**

Habeas corpus relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ---
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Id.*. Federal habeas courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.*

**Claim One - Sufficiency of the Evidence**

The Louisiana Second Circuit Court of Appeal found that there was sufficient evidence before the trial court to support Thornton's conviction of second degree murder. Thornton argues that the evidence was insufficient to support his conviction because it demonstrated that Rodney Caldwell ("Caldwell"), the only other person at the scene of the crime, shot Dunaway.

When a habeas petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. 307, 319 (1979). The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard. *Louisiana v. Thornton*, 836 So. 2d at 1238-39. As an initial matter, the Louisiana court referenced the definition of second degree murder set forth in La. Rev. Stat. Ann. § 14:30.1 A.(1), which provides that "second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." *Louisiana v. Thornton*, 836 So. 2d at 1238.

The Louisiana court ultimately concluded that the evidence before the trial court was sufficient to support a second degree murder conviction against Thornton. *Id.* at 1239. The court reached this conclusion by considering the following facts and evidence:

1. Caldwell testified about the events leading up to the shooting of Dunaway on April 10, 1999 . *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1356-72. Caldwell stated that he and Caldwell were at John's Texaco station when Dunaway visited the store. R., 1365. When Dunaway agreed to give Caldwell and Thornton a ride, they climbed into the bed of Dunaway's pickup truck. *Id.* at 1366. Thornton then told Caldwell to tell Dunaway to stop driving. *Id.* at 1369. When Dunaway stopped, Thornton walked to the driver's side window and told Dunaway to "give it up," which Caldwell interpreted to refer to any money and other valuables that

4

Dunaway had on his person or in his truck. *Id.* at 1371. Caldwell then heard a shot. *Id.* at 1372. Caldwell identified Thornton as the shooter. *Id.* at 1373.

2. Rodriguez Brantley ("Brantley"), a fellow inmate of Thornton's while Thornton was awaiting trial at the Lincoln Parish Detention Center, testified that Thornton told him that he had stolen a .38 pistol from his grandfather and that he had used this pistol to shoot Dunaway. *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1512-15.

3. Vernon Kelson ("Kelson"), another fellow inmate of Thornton's at the Lincoln Parish Detention Center, testified that Thornton drew diagrams for him which outlined how he shot Dunaway. *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1553-59.

4. Michael Stelly, an expert in fingerprint identification, identified Thornton's fingerprints on the diagrams that Kelson mentioned in his testimony. *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1642.

5. Thornton's grandmother testified that her husband, Thornton's grandfather, had reported to the police that his .38 pistol was stolen in April 1999. *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1503.

6. Officer Gerald Jenkins of the Ruston Police Department confirmed that Thornton's grandfather filed a police report about his stolen pistol on April 10, 1999. *Louisiana v. Thornton*, 836 So. 2d at 1238; R., 1506.

In summary, the evidence that the state presented at trial strongly suggested that Thornton stole his grandfather's .38 pistol in early April 1999 and shot Dunaway with this pistol when Dunaway apparently refused to give Thornton any of his money or other valuables. While the evidence does not rule out the possibility that Caldwell shot Dunaway, the evidence is clearly

5

sufficient to support Thornton's conviction when viewing it in the light most favorable to the prosecution. The Louisiana appellate court therefore did not unreasonably apply *Jackson* when it reached the same conclusion. No relief is permitted on this claim.

**Claim Two - *Batson* Challenge**

With his next claim, Thornton, who is African-American, argues that the state trial court erred when it overruled his *Batson* challenge.

*Batson* requires defendants to demonstrate that the State used peremptory challenges in violation of the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 96-98 (U.S. 1986). Since *Batson* is clearly established Supreme Court precedent, *Hernandez v. Lamarque*, 295 Fed. Appx. 235, 237 (Ninth Cir. Oct. 1, 2008), under 28 U.S.C. § 2254(d)(2), Thornton must demonstrate that the trial court's decision in not finding a *Batson* violation was either contrary to or involved an unreasonable application of *Batson*.

In *Batson*, the Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge. *Id.* at 96-98. First, "a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race." *Id.* at 96. Second, "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation" for the use of the peremptory challenge. *Id.* at 97. Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

In order to establish a prima facie case under *Batson*, a defendant: (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire; (2) is entitled to rely on the fact that

peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that the facts and circumstances of the state's use of peremptory challenges raise an inference that the prosecutor exercised peremptory challenges on the basis of race. *Price v. Cain*, 560 F.3d 284, 286-87 (5th Cir. 2009).

The prima facie showing required by *Batson* "is not so onerous that a defendant would have to persuade the judge - on the basis of all the facts, some of which are impossible for the defendant to know with certainty - that the challenge was more likely than not the product of purposeful discrimination." *Johnson v. California*, 545 U.S. 162, 170 (2005). Indeed, a defendant satisfies *Batson's* first step by merely "producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.*

In order to demonstrate that the "facts and circumstances" of the state's use of peremptory challenges would permit the trial judge to draw an inference of racial discrimination, the defendant must 'come forward with facts, not just numbers alone.'" *United States v. Branch*, 989 F.2d 752, 755 (5th Cir. 1993) (citing *United States v. Moore*, 895 F.2d 484, 485 (8th Cir. 1990)). Moreover, "neither the total exclusion of a cognizable group from the jury nor the mere presence of one or two perhaps token members of the group on the jury is dispositive of whether the prima facie requirement is satisfied." *Smith v. Cain*, No. 08-698, 2009 U.S. Dist. LEXIS 71152, at *34 (M.D. La. June 19, 2009) (Riedlinger, J.) "Factors that give rise to an inference of discrimination include, among others, a pattern of strikes against jurors of a certain race and the prosecutor's statements and questions during voir dire." *Brown v. Kinney*, 237 F.3d 556, 561 (5th Cir. 2001). Finally, in this circuit, a trial court's finding that a party has failed to make the necessary prima facie showing for purposes of *Batson* is accorded a "presumption of correctness, which can only

be rebutted by clear and convincing evidence." *Soria v. Johnson*, 207 F.3d 232, 238 (5th Cir. 2000).

Thornton's counsel initially attempted to establish a prima facie case under *Batson* by pointing out that the state used its peremptory challenges only against black jurors. R., 1274. The court subsequently corrected Thornton's counsel by observing that the state used four of its seven peremptory challenges against black jurors and that two black jurors were selected to serve on the jury. *Id.* at 1277-78. Thornton's counsel also argued, "there was nothing that was glaring or anything that stood out in terms of [the black jurors against whom the stated exercised peremptory challenges] that would make them unsuitable other than the fact that they were African-American, and I don't know what else I can show other than that." *Id.* at 1276.

The trial court ultimately concluded that Thornton had failed to make a prima facie showing under *Batson*. In reaching this conclusion, the trial court noted the numerical information about black jurors mentioned in the previous paragraph and also indicated that the state had provided persuasive race-neutral reasons as to at least three of the four challenged black jurors. *Id.* at 1277-79. The court then concluded: "Now, the Court observed . . . the voir dire, and there would only be one [black juror against whom the state exercised a peremptory challenge] that the Court would have any question about, and that would be [George Hamlin]. With those numbers and with that testimony, I cannot see how there is a prima facie establishment of racially discriminatory use of peremptory challenges." *Id.* at 1279.

The undersigned agrees with the state trial court that Thornton did not make a prima facie showing under *Batson*. Thornton simply did not come forward with any facts which would have allowed the trial court to draw an inference of racial discrimination. *See Branch*, 989 F.2d at 755.

Instead, Thornton's counsel came forward with incorrect numerical information and a generalized assertion that the state wrongfully exercised its peremptory challenges on the basis of race. This does not amount to the establishment of a prima facie case under *Batson*. The trial court's determination that Thornton did not establish a prima facie case under *Batson* was therefore not an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2).

Even though the state was not required to proceed to *Batson*'s second step, it nevertheless proffered race-neutral reasons for each of the four black jurors against whom it exercised peremptory challenges. The prosecutor stated that Verdia Williams ("Williams") was a neighbor of defense counsel,[1] that Shirley Jackson ("Jackson") was a friend of defense counsel's family, and that Christopher Cage ("Cage") had testified that he would not be able to vote guilty unless the state could prove motive. R., 1281. Finally, the prosecutor noted that George Hamlin ("Hamlin") had previously observed a portion of an armed-robbery case that the prosecutor had tried. *Id.* at 1282. When the jury adjourned in that case, Hamlin told the prosecutor that he believed that the defendant was not guilty and asked the prosecutor why he was still proceeding with the case. *Id.* The prosecutor testified that what concerned him about Hamlin and caused him to exercise a peremptory challenge against him was "the fact that Mr. Hamlin only watched part of the trial and made his decision based on part of the trial." *Id.*

In a *Batson* challenge, step three automatically follows step two. *United States v.*

---

[1] As an additional race-neutral reason for exercising a peremptory challenge, the prosecutor also told the trial court that Williams was a "friend" of defense counsel's family. R., 1281. However, at voir dire Williams specifically testified that she did not socialize with defense counsel. *Id.* at 882. Accordingly, the state subsequently conceded that it had erred and that its only race-neutral reason for striking Williams was the proximity between the houses of Williams and defense counsel. Doc. # 50 at 6.

*Williams*, 264 F.3d 561, 571 (5th Cir. 2001).  The third and final step of *Batson* requires a court to determine the "decisive question" of "whether a proffered race-neutral explanation should be believed" or whether it is pretext for discrimination.  *Id.* at 572.  In assessing this question, the court engages in a "comparative analysis" of the reasons the state proffered for exercising peremptory challenges against black jurors with the state's treatment of white jurors, even if the petitioner does not provide the court with a comparative analysis of his own.  *Reed v. Quarterman*, 555 F.3d 364, 373 (5th Cir. 2009).  Under this analysis, "if the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, that is evidence that the asserted justification was a pretext for discrimination."  *Id.* at  375.

The trial court never reached *Batson*'s third step because it found that Thornton had failed to establish a prima facie case of racial discrimination, as required by *Batson*'s first step.  However, out of an abundance of caution, this court ordered a hearing on Thornton's *Batson* challenge on February 18, 2010, to allow Thornton to argue that the state's proffered reasons for exercising a peremptory challenge against Williams, Jackson, Cage, and Hamlin were pretextual under *Batson*'s third step.  Doc. # 33.  Thornton has failed to make this showing.

Thornton argues that the state's proffered reason for exercising a peremptory challenge against Williams - because she was a neighbor of defense counsel - is pretext for discrimination because the state accepted a white juror, Richard Hudson ("Hudson"), who also knew defense counsel, and because the state's prosecutor did not question Hudson regarding where he lived, and therefore could not have been as concerned about whether a potential juror was a neighbor of the defense counsel as he claimed.  However, a review of the record indicates that Williams and

10

Hudson are not sufficiently similarly situated to demonstrate that the state's exercise of a peremptory challenge against Williams is pretext for discrimination. Williams testified that she lived in "reasonable close proximity" to defense counsel. R., 882. Hudson, on the other hand, testified that he knew both of the prosecutors as well as defense counsel. *Id.* In addition, at the hearing on this matter, the prosecutor testified that (1) he took the term "close proximity" to mean, "one or two houses away," and (2) he did not question Hudson regarding where he lived because he had personal knowledge of Hudson, and was aware that he lived in Ruston, not in Grambling. The state therefore had credible race-neutral reasons to exercise a peremptory challenge against Williams but to accept Hudson.

Thornton did not provide the court with a *Batson* comparative analysis for jurors Jackson, Cage, and Hamlin, instead pointing out that each of these jurors testified that they could be fair and impartial. Pursuant to *Reed*, the court has conducted its own comparative analysis of the state's proffered race-neutral reasons for exercising peremptory strikes against these jurors with the state's treatment of white jurors and concluded that the proffered reasons were credible.

**Claim Three - Juror Observed Defendant in Handcuffs**

Prior to trial, juror Devery Rowland ("Rowland") viewed Thornton in handcuffs as he was being escorted by Deputy James Duggan ("Duggan"). R., 1654. Rowland was waiting for an elevator in the courthouse when an elevator carrying Thornton and Duggan stopped on the floor where Rowland was waiting. *Id.* While Rowland did not get on the elevator, and did not say anything to Duggan or Thornton, he noticed that Thornton was wearing handcuffs. *Id.* at 1654-55.

At a conference in the trial judge's chambers, Rowland related the preceding information and also told the judge that he would not be influenced in his deliberations by the sight of

Thornton in handcuffs. *Id.* at 1655. Rowland further affirmed that he could remain fair and impartial. *Id.*

Thornton contends that his due process rights were violated when the trial court failed to declare a mistrial after Rowland saw him in handcuffs. However, it is well settled that "a brief and fortuitous encounter of the defendant in handcuffs by jurors is not prejudicial and requires an affirmative showing of prejudice by the defendant." *Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976). Thornton cannot make the necessary showing of prejudice because Rowland stated that he could remain fair and impartial despite observing Thornton in handcuffs. Accordingly, no relief is permitted on this claim.

**Claim Four - Excessive Sentence**

Thornton next argues that the sentence he received - mandatory life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence - was unconstitutionally excessive. This argument, however, is unavailing.

Thornton was convicted of second degree murder. In Louisiana, "whoever commits the crime of second-degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." LA. REV. STAT. ANN. § 14:30.1. Moreover, "if a sentence is within the statutory limits," to obtain relief a defendant must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' (citation omitted), or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).

Thornton received the statutorily required sentence for second degree murder. The

sentence was not arbitrary and capricious because, as the Louisiana appellate court observed, Thornton's crime "can be characterized as nothing short of a cold-blooded killing motivated by greed." *Louisiana v. Thornton*, 836 So. 2d at 1242.  Furthermore, an error of law did not result in an improper exercise of discretion by the sentencing judge because the Louisiana statute that governs second degree murder, LA. REV. STAT. ANN. § 14:30.1, does not give the sentencing judge any discretion to impose a sentence other than the sentence Thornton received - "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."

### Claim Five - Defendant Did Not Receive a Trial Transcript

For his fifth claim, Thornton contends that the state's refusal to provide a free copy of a trial transcript violated his due process rights under the Fourteenth Amendment.  However, Thornton's counsel apparently obtained a copy of the trial transcript prior to his appeal to the Louisiana Second Circuit Court of Appeal because his appellate brief includes many references to the trial transcript.  R., 1766.

If appellate counsel receives a copy of the trial transcript prior to the appeal, the Constitution does not require the defendant to receive his own copy.  *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973).  Accordingly, Thornton is not entitled to any relief on this claim.

### Claim Six - Right against Self-Incrimination

Thornton also contends that the state infringed upon his privilege against self-incrimination.  Thornton specifically contends that the police coerced a confession from him. Since Thornton does not specifically identify the statement that allegedly infringed upon his privilege against self-incrimination, the undersigned will evaluate Thornton's claim with reference to the two statements made by Thornton which the state introduced at trial.

The first of Thornton's statements which the state introduced was an exculpatory statement that Thornton made while he was in custody. R., 1463. In *Miranda*, the Supreme Court extended its holding to both inculpatory and exculpatory statements. It held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

While *Miranda* places upon the government a heavy burden regarding both inculpatory and exculpatory statements to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination, *United States v. Hopkins*, 433 F.2d 1041, 1044 (5th Cir. 1970), the undersigned finds that this burden has been met. Darrell Newson ("Newsom"), the police officer in the Ruston Police Department to whom Thornton made his exculpatory statement, testified that before Thornton made the statement, he read Thornton his *Miranda* rights and also asked him, "With these rights in mind, do you want to give us a statement or talk to us?" R., 1462. Newsom also testified that neither he nor any other officer in the Ruston Police Department threatened or coerced Thornton to make a statement. *Id.* at 1463. Furthermore, Thornton provided the court with absolutely no evidence to support the generalized assertion in his habeas petition that his confession was coerced. Doc. # 2, 38-39.

The second of Thornton's statements that the state introduced was a statement that Thornton made to another officer in the Ruston Police Department, Eric Hanna ("Hanna"). Hanna testified that on April 12, 1999, two days after Dunaway was shot, he approached Thornton in the front yard of a residence in Ruston, identified himself as a police officer, and asked Thornton for his name. R., 1465-67. Thornton responded that his name was "Hussan Deberry." *Id.* at 1467.

A *Miranda* warning is constitutionally required only when a defendant is "questioned while in custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 1612. "A suspect is in custody for purposes of *Miranda* when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006).

A reasonable person in Thornton's position would not have understood the situation to constitute a restraint on freedom of movement equivalent to formal arrest. Hanna approached Thornton in front of a residence in Ruston, a public location. Hanna did not tell Thornton that he was not free to leave, nor did Hanna display any weapons. Hanna simply asked Thornton for his name. When Thornton responded, Hanna went back to his car. R., 1467. Accordingly, Thornton cannot demonstrate that the state introduced a statement of his in violation of his privilege against self-incrimination.

**Claim Seven - Ineffective Assistance of Counsel**

Thornton's seventh and final claim contends that he was denied the effective assistance of counsel by his trial counsel, Richard Gallot ("Gallot"). Specifically, Thornton contends that he was denied the effective assistance of counsel by his trial counsel for the following reasons: (a) inadequate investigation or research; (b) failure to enforce the plea agreement; (c) failure to file a motion to exclude damaging evidence; (d) failure to file a motion to change venue and object to indictment; (e) failure to impeach and cross-examine witnesses; and (f) use of deception to prevent Thornton from testifying.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1)

that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). The defendant must overcome a "preponderance of the evidence" burden of proof as to both prongs. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).

Thornton has not pointed to any evidence, either in his habeas petition or a subsequent brief that he filed with the court, to support his generalized assertions that he was denied the effective assistance of counsel. Accordingly, Thornton failed to carry his burden of proof on all seven of his *Strickland* claims.

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (Doc. #1) under 28 U.S.C. § 2254 be **DENIED**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 5th day of March, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE